FILED

JUL 2 3 2007
JuL 23,2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ED TADROS, and HAZEL CREST FOOD & LIQUORS INC., an Illinois corporation, ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> VILLAGE OF HAZEL CREST, an Illinois municipal corporation, ROBERT DONALDSON, RODERICK S. BASHIR, JANE BROWN, LEE FANTROY and DEBORAH MCGHEE, ) <br><br> Defendants. ) | 07CV4132 <br> JUDGE FILIP <br> MAG. JUDGE BROWN <br><br> TRIAL BY JURY DEMANDED |

## VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

NOW COME the Plaintiffs by and through their attorney, Dennis E. Both, and complaining of the Defendants, Village of Hazel Crest, an Illinois municipal corporation, Robert Donaldson, Roderick S. Bashir, Jane Brown, Lee Fantroy and Deborah McGhee, state as follows:

### INTRODUCTION

This is an action brought pursuant to the First (1st) and Fourteenth (14th) Amendments of the United States' Constitution, 42 USC Section 1983, the Constitution of the State of Illinois and Illinois State Law seeking to redress the Defendants' retaliatory taking of the Plaintiffs' property without due process of law.

### JURISDICTION AND VENUE

This Court has jurisdiction of the action pursuant to 28 USC Section 1331 and 1343 (a) (3) and has supplemental jurisdiction pursuant to 28 USC Section 1367.

Venue is proper under 28 USC Section 1391 (b) as all of the parties are located in this judicial district and the events giving rise to the claims asserted herein occurred within this district.

## PARTIES

1.  Ed Tadros ("Tadros") is the owner and operator of Hazel Crest Food & Liquor, Inc.

2.  Hazel Crest Food & Liquor, Inc. ("Hazel Crest Food") is a corporation organized and existing under the laws of the state of Illinois.

3.  The Village of Hazel Crest ("Hazel Crest") is an Illinois municipal corporation.

4.  Robert Donaldson ("Donaldson") is the President and Local Liquor Control Commissioner of Hazel Crest.

5.  Roderick S. Bashir ("Bashir") is a trustee for Hazel Crest.

6.  Jane Brown ("Brown") is a trustee for Hazel Crest.

7.  Lee Fantroy ("Fantroy") is a trustee for Hazel Crest.

8.  Deborah McGhee ("McGhee") is a trustee for Hazel Crest.

## BACKGROUND

1.  Hazel Crest Food is in the business of operating a neighborhood convenience store for the sale of food and alcoholic beverages not for consumption on the premises.

2.  Tadros has owned and operated Hazel Crest Food at 2014 West 170th Street, Hazel Crest, Cook County, Illinois (the "Property") since he purchased the Property in April of 1995.

2

3.      Tadros is the fourth owner and store operator at the Property, the prior owner operated a store and sold alcohol for approximately thirty-five (35) years and on information and belief there has been a store selling alcohol on the Property for a period of sixty (60) years.

4.      Hazel Crest is operated and controlled by a President and a Board of Trustees.

5.      Hazel Crest adopted a municipal code (the "Code") which provides for its operation and among other things authorizes and regulates the sale of alcoholic liquor within its corporate limits.

6.      Pursuant to Chapter 4 Section 4-3 of the Code, Defendant Donaldson as Hazel Crest President is the Liquor Control Commissioner and charged with the administration of the provisions of the Code relative to the sale of alcoholic beverages. A copy of Chapter 4 Section 4-3 is attached hereto and incorporated herein as Exhibit A.

7.      As President and Liquor Control Commissioner, Donaldson, has only those powers granted to him by the Code or other relevant enabling legislation.

8.      Pursuant to Chapter 4 Section 4-4 of the Code, Donaldson has the power to revoke liquor licenses issued pursuant to the code only for cause and to suspend the same for a period of not more than thirty (30) days.

9.      Pursuant to Chapter 4 Section 4-4 (4) of the Code, Donaldson is authorized to receive complaints from citizens that any provision of Chapter 4 or the State of Illinois Liquor Control Act has been violated and is authorized to act upon such complaint in the manner provided by law. A copy of Chapter 4 Section 4-4 of the Code is attached hereto and incorporated herein as Exhibit B.

3

10.     Hazel Crest has adopted a licensing scheme pursuant to Chapter 4 Section 4-33 of the Code, establishing classes of local liquor licenses. A copy of Chapter 4 Section 4-33 is attached hereto and incorporated herein as Exhibit C.

11.     Commencing at the time of the purchase of the Property, the Plaintiffs applied for and received a Class E Local Liquor License and have applied for and received a renewed annual Class E Local Liquor License every year since the purchase.

12.     The Plaintiffs last applied for and received their annual Class E Local Liquor License on April 24, 2007 with an expiration of April 30, 2008 (the "License"). A copy of the License is attached hereto and incorporated herein as Exhibit D.

13.     Pursuant to Chapter 4 Section 4-35 of the Code the License terminates April 30 of the year following its issuance. A copy of Chapter 4 Section 4-35 is attached hereto and incorporated herein as Exhibit E.

14.     By Chapter 4 Section 4-34 of the Code Hazel Crest has provided for the issuance of three (3) Class E Local Liquor Licenses including Plaintiffs'. A copy of Chapter 4 Section 4-34 in attached hereto and incorporated herein as Exhibit F.

15.     The Plaintiffs also applied for and received a business license for the operation of the convenience store at the Property which states on the face thereof **"THE BUSINESS HAS BEEN FOUND TO BE COMPLIANT WITH ALL VILLAGE CODES AND HEALTH REGULATIONS AT THE TIME OF ISSUANCE."** A copy of the business license is attached hereto and incorporated herein as Exhibit G.

16.     At no time since the purchase of the Property have the Plaintiffs or either of them been accused of violating any provision of the Code or any other applicable statute, Ordinance or regulation.

4

17.     The Plaintiffs have never been cited, fined or suspended for violating any statute, Ordinance or regulation regarding the Property or the sale of alcoholic beverages.

18.     Hazel Crest has provided by Chapter 4 Section 4-41 of the Code for a mechanism to suspend or revoke a license for violations of the Code or the Illinois Liquor Control Act after written notice and prohibits suspension or revocation of a local liquor license except after public hearing. A copy of Chapter 4 Section 4-41 is attached hereto and incorporated herein as Exhibit II.

19.     Pursuant to 235 ILCS 5/7-5 the Local Liquor Control Commissioner may revoke or suspend any license issued by him if he determines that the licensee has committed a violation of an applicable law, however no license may be suspended or revoked and no fine issued except after a public hearing with a three (3) day written notice affording the licensee an opportunity to appear and defend. Thereafter the Local Liquor Control Commissioner must reduce the evidence to writing and maintain a record of the proceedings. Licensees such as the Plaintiffs may appeal sanctions issued pursuant to such hearings and may remain open pending the outcome of the appeal. 235 ILCS 5/7-9.

20.     At no time have the Plaintiffs received a notice nor citation nor has the hearing required by the Code or 235 ILCS 5/7-5 been held.

21.     On June 12, 2007, at the instigation of Donaldson, the Defendants introduced and passed an Ordinance which would prohibit the issuance of Class E Liquor Licenses within "Hazel Crest Proper TIF District" (the "Ordinance"). A copy of the Ordinance is attached hereto and incorporated herein as Exhibit I.

22.     The only Class E Local Liquor License issued within the Hazel Crest Proper TIF District is that which was issued to the Plaintiffs.

5

23. The Ordinance does not prohibit Class E or any other package goods licenses in any other TIF.

24. Hazel Crest has designated five (5) separate areas within the corporate limits as Tax Increment Financing Districts ("TIF").

25. The Property is located at the far eastern edge of the TIF commonly called the Hazel Crest Proper TIF

26. Prior to Donaldson beginning the plot to revoke the License a development pursuant to the Hazel Crest Proper Tiff's development plan began.

27. A Class E licensee commonly known as Moo and Oink is located in a TIF and is unaffected by the Ordinance.

28. A liquor store commonly known as Emporium Liquors sells alcoholic beverages not for consumption on the premises, just as Plaintiffs' do, is located in a TIF and is unaffected by the Ordinance.

29. Aldi Foods is located in a TIF and sells beer and wine not for consumption on the premises and is unaffected by the Ordinance.

## THE PLOT

30. There are different political factions within the corporate authorities of Hazel Crest.

31. Donaldson was elected for the first time and took office in May 2005.

32. Prior to Donaldson's election the Plaintiffs had no disputes with Hazel Crest and Hazel Crest had no disputes with the Plaintiffs.

33. Donaldson is the political leader of one of the political factions within the Hazel Crest corporate authorities.

6

34.     At the time of Donaldson's election the Plaintiffs did not support him.

35.     At the time of Donaldson's election certain members of the Board of Trustees held political views separate from Donaldson's, sometimes in opposition to Donaldson, and those Trustees were not in lock step with or under the thumb of Donaldson; included within this faction were Trustees Susan Pate, Eric Leaner, Vernard Alsberry and Elizabeth Wakefield-Waldron.

36.     At all times relevant hereto Trustee Elizabeth Wakefield-Waldron was President of the Hazel Crest Proper Neighborhood Association (the "Association") which community organization supported Hazel Crest but was not a supporter of Donaldson.

37.     The Plaintiffs were political supporters of the association and supplied in kind contributions to support the Assocation's events such as spaghetti dinners.

38.     Heldia Richardson ("Richardson") is a supporter and ally of Donaldson, a member of the Association and has been appointed by Donaldson as Chaplain of the Hazel Crest Police Department and the membership of various Hazel Crest commissions.

39.     Richardson approached the Plaintiffs for a donation.

40.     Not knowing who Richardson was or the influence she wielded the Plaintiffs rejected the request.

41.     Thereafter Richardson publicly and to Donaldson expressed her contempt for and dislike of the Plaintiffs referring to Tadros as the Mexican and saying he was not likeable and began to complain about Hazel Crest Food.

42.     On or about November 2006 Donaldson expressed his view that the Class E liquor license, then held by the Plaintiffs, should be revoked or that Hazel Crest should find a way to eliminate the same.

43. When asked why Donaldson would eliminate only the Plaintiffs' Class E license and not that of Moo and Oink, Donaldson stated that Moo and Oink were supporters of "Hazel Crest" and the Plaintiffs were not, meaning that Moo and Oink were political supporters of Donaldson and the Plaintiffs were not.

44. Trustees who had been supported by the Plaintiffs including Trustee Susan Pate expressed her opinion that Donaldson's actions in selectively eliminating only the Plaintiffs' license was unfair.

45. Realizing that politically he did not have the votes to railroad his proposition through, Donaldson deferred his plan to eliminate the Plaintiffs' license.

46. In April 2007 Hazel Crest held an election for Trustee positions. Trustees Susan Pate, Eric Leaner and Vernard Alsberry were up for reelection and were not supported by Donaldson.

47. In the April 2007 election Donaldson supported Defendants Bashir and McGhee.

48. The Plaintiffs supported the election efforts of Susan Pate, Eric Leaner and Vernard Alsberry, posted their reelection signs on the Property and allowed them to place their election campaign materials on the Property for distribution to the Plaintiffs' customers.

49. In the April election Donaldson's slate defeated Susan Pate and Eric Leaner thus giving Donaldson control of the Board of Trustees.

50. With control of the majority of the Board and with the co-Defendants desirous of carrying out the whims and wishes of Donaldson, Donaldson pushed to introduce the Ordinance.

8

## THE PLOT THICKENS

51.     The Defendants gave no notice to the Plaintiffs that the Ordinance was being considered.

52.     Donaldson ordered Hazel Crest to hold what it described as a public hearing to consider adopting the Ordinance.

53.     On May 31, 2007 the hearing (the "Hearing") was conducted by Defendant Bashir at the behest of Defendant Donaldson.

54.     The Hearing was not a hearing in that the trustees in attendance including Bashir refused to allow questions from the audience, refused to answer questions and instead only allowed members of the audience to comment but failed or refused to provide copies of the Ordinance to allow meaningful comment thereon.

55.     At the Hearing public speakers spoke out in favor of the Plaintiffs and against the Ordinance by a margin of thirty (30) to one (1).

56.     At the Hearing the Plaintiffs provided Bashir with a petition containing in excess of three hundred (300) signatures stating the public's opinion in favor of the Plaintiffs and against the Ordinance.

57.     No advance notice of the Hearing was provided to the Plaintiffs, even though Plaintiffs were the only persons or entities affected by the Ordinance and the Plaintiffs were only made aware of this hearing when he received a request for comment by the local newspaper.

58.     Following the Hearing Hazel Crest posted its view of the Hearing on its website, a copy which report is attached hereto and incorporated herein as Exhibit J.

59.     That report cites comments from persons who were not present at the Hearing despite the fact that the Plaintiffs were not offered any opportunity to supplement the record.

9

60.     At the Hearing the Plaintiffs requested that Hazel Crest convene a meeting to discuss whatever problems the Defendants had with the Plaintiffs continued existence which request was refused.

61.     On June 12, 2007 a meeting of the Board of Trustees of Hazel Crest (the "Meeting") was convened and the Ordinance placed on the agenda. Once again the Defendants gave no notice to the Plaintiffs that the Ordinance was on the agenda or would be given further consideration and but for the Plaintiffs' own vigilance the Defendants' actions in considering the Ordinance would have gone uncontested.

62.     Once again the Plaintiffs rallied the community and Plaintiffs and their supporters appeared at the Meeting and spoke against the Ordinance.

63.     Donaldson and the other Defendants appeared at the Meeting.

64.     Once again the Plaintiffs requested that there be no rush to judgment and questioned why the Defendants would issue a license in May and effectively revoke the same in June without notice, without charge and without hearing, which inquiry was ignored and unanswered.

65.     At the Meeting the Plaintiffs renewed their request for a meeting with Hazel Crest officials to iron out any issues and their request was ignored.

66.     The Ordinance was an initiative promoted by Donaldson and Donaldson appeared bent on revoking the License regardless of public opinion and regardless of the fact that no cause existed.

67.     The Defendants passed the Ordinance at the Meeting.

10

68.     The effect of the Ordinance is to revoke the Plaintiffs' properly issued Class E

Local Liquor License when they have violated no statute, ordinance or regulation. On its face

the Ordinance requires the License, valid for one year, to cease within ninety (90) days.

69.     Despite its passage the Defendants still have not communicated an effective date

to the Plaintiffs.

70.     To give the Defendants action an air of legitimacy and as subterfuge for its

passage the Ordinance states in relevant part:

> "Whereas the Mayor and Board of Trustees find that the sale of what is
> commonly referred to as 'package liquor;' that is, alcoholic beverages sold at
> retail in their original package or container not for consumption on the premises
> can result in adverse secondary effects which are contrary to the purpose of the
> Hazel Crest Proper Tax Increment Financing District.
>
> "Whereas, the Mayor and the Board of Trustees have determined that the
> goals of economic development and neighborhood stability within the Hazel Crest
> Proper Tax Increment Financing District will be served by prohibiting the
> issuance of any Class E Liquor Licenses within the Hazel Crest Proper TIF
> District."

71.     The Plaintiffs, through their attorney, filed requests for information pursuant to

the terms of the Illinois Freedom of Information Act seeking among other things:

> 10. Any and all documents which identify adverse secondary effects associated
> with the sales of packaged liquor in Hazel Crest Proper Tax Increment Financing
> District.
>
> 11. Any and all documents that the Mayor and Board of Trustees relied upon in
> finding that package liquors can result in adverse secondary effects which are
> contrary to the purpose of the Hazel Crest Proper Tax Increment Financing
> District.
>
> 12. Any and all documents that the Mayor and Board of Trustees relied upon in
> determining that the goals of economic development and neighborhood stability
> within the Hazel Crest Proper Tax Increment Financing District will be served by
> prohibiting the issuance of Class E liquor licenses within the Hazel Crest Proper
> Tax Increment Financing District.
>
> 13. Any and all documents relied upon by the Mayor and Trustees in determining
> that ninety (90) days was reasonable for amortizing an existing Class E liquor
> license.

11

72. Despite the fact that the Illinois Freedom of Information Act requires a response within seven (7) business days the Defendant delayed responding to the June 13, 2007 request until July 17, 2007 when it responded that it had no documents responsive to the aforedescribed requests. A copy of the response is attached hereto and incorporated herein as Exhibit K.

73. Operation of the store is Hazel Crest Food's sole business and Tadros relies upon the sales from Hazel Crest Food for income and support.

74. Hazel Crest Food does annual gross sales of approximately three hundred eighty thousand dollars ($380,000.00) of which approximately one hundred twenty-seven thousand dollars ($127,000.00) comes from the sale of alcoholic beverages.

75. One-third of the Plaintiffs' gross income will be lost by action of the Ordinance.

76. As a convenience store Hazel Crest Food exists and is able to compete with other stores that sell food and alcoholic beverages because its location is convenient. If people are unable to purchase alcoholic beverages from the Plaintiffs but can do so from other Class E license holders or packaged good sellers the Plaintiffs will lose the business and sales as persons find it more convenient to shop elsewhere where other licensees sell a full range of consumable products including alcoholic beverages.

77. The Defendants have not provided any documentation or articulated any basis to distinguish between the "adverse secondary effects" created by Plaintiffs' operations and the adverse secondary effects associated with other Class E liquor licenses or other Class E licensees in TIFs, the sale of packaged goods in general or even the sale of alcoholic beverages for consumption on the premises.

78.     The loss of the right to sell alcoholic beverages will severely and detrimentally affect the Plaintiffs' business. The Plaintiffs have been in operation for more than twelve (12) years and the store in existence for more than sixty (60) years and the selection of a ninety (90) day period to cease operations is arbitrary capricious and unreasonable.

79.     The Defendants could not provide any factual basis for selecting a ninety (90) day wind down period and ninety (90) days is unreasonable considering that the Plaintiffs have a license which is good for one year and ninety (90) days is insufficient to deplete the entire inventory of alcoholic beverages and find something to supplement the loss of sales.

80.     No legitimate health or safety issues are raised by the sale of alcoholic beverages in their original containers from the Property as opposed to the sale of the same beverages from other locations within the TIF District or other locations within the corporate limits of Hazel Crest.

81.     The Ordinance provides for no mechanism for the disposition of alcoholic beverage inventory after the ninety (90) day period.

82.     The Seventh Circuit has determined that a license for the sale of alcoholic beverages is a property right. See *Reed v. Village of Shorewood*, 704 F 2nd 943 (7th Cir. 1983).

83.     The Defendants could not have revoked the license directly as no cause therefore existed.

84.     The Plaintiffs have no right to appeal a legislative act to the State of Illinois Liquor Control Commission.

13

85.     The passage of the Ordinance is not an administrative act and is not reversible pursuant to the Illinois Administrative Review Law.

## COUNT I

1.      Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count I as if fully set forth herein.

2.      The Plaintiffs will suffer irreparable harm through loss of sales, revenue, income and good will of clients by virtue of the revocation of the License.

3.      The Constitution of the United States and of Illinois guarantees the Plaintiffs the rights to be free from political retaliation, the right to support and associate as they desire, the right to be treated equally among equals and the right to own property and to not have that property summarily taken from them without process or compensation.

4.      The Plaintiffs have no adequate remedy at law as the Defendants were crafty enough to revoke the License in a manner that does not provide for legal review and damages will not repair the loss of good will, nor prevent the loss of sales of nonalcoholic items caused by customers shopping elsewhere and legal remedies do not prevent the continuing nature of the injury.

## COUNT II
## DECLARATION OF RIGHTS

1.      Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count II as if fully set forth herein.

2.      28 USC Section 2201 provides that in the case of actual controversies the Court may declare that the rights of any interested party seeking such declaration.

14

3.     If the Plaintiffs continue to sell alcoholic beverages after the ninety (90) day period expires they risk prosecution.

4.     The passage of the Ordinance creates an actual controversy and is ripe for adjudication.

5.     The Plaintiffs seek a declaration of invalidity of the Ordinance as arbitrary, capricious and unreasonable and unrelated to legitimate governmental concerns.

## COUNT III
## DUE PROCESS

1.     Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count III as if fully set forth herein.

2.     The Ordinance has revoked the License without notice, without hearing, without evidence, without the Plaintiffs' right to present witnesses or cross-examine the witnesses against him and without right of appeal and as such the Plaintiffs have been denied the right to procedural due process.

## COUNT IV
## CLASS OF 1 EQUAL PROTECTION

1.     Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count IV as if fully set forth herein.

2.     Passage of the Ordinance by the Defendants is state action.

3.     The Plaintiffs are similarly situated to Class E license holders located in TIF districts in Hazel Crest. The Plaintiffs are similarly situated to other sellers of alcoholic beverages not for consumption on the premises.

4.     There is no rational distinction between the Plaintiffs and Aldi Foods, Emporium Liquors or Moo and Oink but the Plaintiffs have intentionally been treated different from them.

5.     The motivation for the passage of the Ordinance was wholly unrelated to legitimate objectives of the government.

6.     The passage of the Ordinance by the Defendants was motivated out of personal animosity toward the Plaintiffs and in retaliation for the Plaintiffs support of the Defendants' political opponents and the failure to support the Defendants and their cronies politically.

**COUNT V**
**THE TAKING**

1.     Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count V as if fully set forth herein.

2.     The Defendants by adoption of the Ordinance deprived the Plaintiffs of their property in violation of the Fifth (5th) and Fourteenth (14th) Amendment to the United States' Constitution.

3.     The Defendants have paid no compensation to Plaintiffs in exchange for the taking of their property.

**COUNT VI**
**FIRST AMENDMENT**

1.     Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count VI as if fully set forth herein.

2. As alleged above the Plaintiffs supported persons who are and were political opponents of Donaldson and the other individual defendants and publicly supported candidates for election who did not support Donaldson's politics.

3. Acting in concert with one another the individual Defendants unlawfully conspired to punish the Plaintiffs and ultimately did punish the Plaintiffs for their exercise of political free speech.

4. The aforedescribed retaliation took the form of the Ordinance.

## COUNT VII
## BILL OF ATTAINDER

1. Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count VII as if fully set forth herein.

2. The Ordinance affects only the Plaintiffs.

3. The Ordinance punishes the Plaintiffs for their past political support of persons whose political views are opposed to the Defendants.

4. The passage of the Ordinance has legislative punishment to the Plaintiffs violates Article 1 Section 10 of the Constitution of the United States.

## COUNT VIII
## INDEMNIFICATION

1. Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count VIII as if fully set forth herein.

2. The Defendants were employees or officials of Hazel Crest and acted within the scope of their employment in committing the misconduct described herein and the Defendant Hazel Crest was their principal.

17

Case: 1:07-cv-04132 Document #: 1 Filed: 07/23/07 Page 18 of 41 PageID #:18

3.     The Defendant Hazel Crest is a municipal corporation required to provide indemnity within the meaning of 735 ILCS 10/9-102 for all actual damages caused by the individual Defendants.

## COUNT IX
## VIOLATION OF THE CONSTITUTION OF THE STATE OF ILLINOIS

1.     Plaintiffs readopt and reallege paragraphs 1 through 85 as paragraph 1 of Count IX as if fully set forth herein.

2.     Article 1 Section 4 of the Illinois Constitution Protects the freedom of speech without fear of unjust retaliation.

3.     As more fully described in a preceding paragraph, Defendants have infringed upon the Plaintiffs' right to free speech.

4.     The misconduct aforedescribed was undertaken with malice, willfulness and wreckless indifference to the rights of the Plaintiffs.

5.     As a result of the aforedescribed wrongful infringement of the Plaintiffs' rights under the Illinois Constitution the Plaintiffs have suffered and continue to suffer the damages.

WHEREFORE the Plaintiffs pray this Honorable Court enter judgment in their favor as follows:

a.     For declaration of rights that the Ordinance is unconstitutional and unenforceable;

b.     For temporary and permanent injunctive relief prohibiting Defendants from enforcing the Ordinance;

c.     Compensatory damages;

d.     Punitive damages against the individual Defendants; and

18

c.    Attorneys' fees and costs.

## JURY DEMAND

Plaintiffs, Ed Tadros and Hazel Crest Food & Liquors, Inc., demand trial by the

maximum number of jurors permitted by law on issues so triable.

Respectfully Submitted,

**ED TADROS and HAZEL CREST FOOD & LIQUORS, INC.**

BY: _____

One of its attorneys

Dennis E. Both
BROWN, UDELL & POMERANTZ, LTD.
1332 North Halsted Street, Suite 100
Chicago, Illinois  60622
(312) 475-9900
Attorney Code:  34089

## CERTIFICATION BY VERIFICATION

I, Ed Tadros, declare that I have read the foregoing MOTION FOR ENTRY OF A
TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION
and know its contents and the same is true according to my own personal knowledge or
according to my own personal knowledge and belief.

Ed Tadros
Owner, Hazel Crest Food & Liquors, Inc.

**Sec. 4-3. Local liquor control commissioner – Designated; assistants; compensation.**

The village president shall be the local liquor control commissioner and shall be charged with the administration of the provisions of this chapter and the appropriate provisions of the Liquor Control Act of the state, and may appoint any person to assist him in the exercise of such responsibilities. The village president elected at the April 2001 election and elected or appointed thereafter shall receive two thousand dollars ($2,000.00) annually for service as commissioner, with a three (3) percent annual increase thereafter beginning May 1, 2002, such compensation to be paid as provided in section 2-85 of the Municipal Code.

EXHIBIT
A

**Sec. 4-4. Same – Powers, duties.**

The local liquor control commissioner shall have the following powers, functions and duties:

(1) To grant and suspend, or both, for not more than thirty (30) days, or revoke for cause, all local licenses issued to persons for premises within the village;

(2) To enter or to authorize any law enforcing officer to enter upon the premises licensed under this chapter to determine whether any of the provision s of this chapter or of the Liquor Control Act of the state have been or are being violated;

(3) To receive or cause to be received all local license fees and pay them forthwith to the village treasurer;

(4) To received complaints from any citizen of the village that any provision of this chapter or the Liquor Control Act has been or is being violated, and to act upon such complaint in the manner provided by law;

(5) To examine or cause to be examined under oath any applicant for a village license, or for renewal thereof, or any licensee upon whom notice of revocation has been served, all as provided in 235 ILCS 5/4-5, as amended from time to time.

(6) TO require employees with licensed premises who serve alcohol to attend a certified training program for intervention procedures by servers of alcohol.

(7) To require employees within licensed premises who sell or serve alcohol to attend and Illinois Liquor Control Commission certified beverage alcohol sellers and severs education and training (BASSET) program.

EXHIBIT

B

**Sec. 4-33. License classifications; fees.**

Licenses permitting the sale of alcoholic liquor at retail shall be of the following classes:

(1) *Class A* licenses which shall authorize the retail sale on the premises specified of alcoholic liquor for consumption on the premises as well as other retail sales of such liquor. The annual fee for such license shall be twelve hundred dollars ($1200.00), due and payable one-half on May first and one-half on November first of each year.

(2) *Class B* licenses, which shall authorize the retail sale of alcoholic liquor but not for consumption on the premises where sold; such premises are commonly referred to as "liquor package stores," alcoholic liquor being the principal merchandise offered for sale. The annual fee for such license shall be twelve hundred dollars ($1200.00), due and payable one-half on May first and one-half on November first of each year.

(3) *Class C* licenses, which shall be issued as special privilege licenses authorizing clubs and associations of national scope to sell alcoholic beverages at retail on the premises specified to all members and guests. Use of this license shall be limited to clubs or associations that sponsor less than twelve (12) events per year which are open to the general public. The annual license fee shall be eighty-five dollars ($85.00), due and payable on May first of each year.

(4) *Class D* licenses which shall be issued to restaurants and lounges permitting the retail sale of any alcoholic liquor or on-premises consumption only when served to patrons seated at tables or counters, or at a separate bar or lounge. The annual fee for such license shall be one thousand two hundred dollars ($1,200.00), due and payable one-half on May 1 and one-half on November 1 of each year.

(5) *Class E* licenses, which shall authorize the retail sale of alcoholic liquor, but not for consumption on the premises, in grocery and drug stores, where alcoholic liquor is not the principal line of merchandise of such store. The annual fee for such license shall be eight hundred fifty dollars ($850.00), due and payable one-half on May first and one-half on November first of each year.

(6) *Class F* licenses which shall be short-term licenses issued for no more than four (4) days only in connection with a specific event sponsored by the village, a village-recognized organization, a church, civic organization, fraternal group or similar entity. Such license shall authorize the retail sale of alcoholic liquor for consumption on the premises only. The fee for such license shall be sixty dollars ($60.00) for profit-making organizations and five dollars ($5.00) for nonprofit organizations. Said fee shall be payable prior to the event for which it is requested.

(7) *Class G* licenses, which shall be issued to restaurants permitting the retail sale of beer/wine for on-premises consumption only when served with meals to patrons seated at tables or counters. The annual fee for such license shall be twelve hundred dollars ($1,200.00), due and payable one-half on May first and one-half on November first of each year.



(8)  *Class H* licenses which shall be issued as special privilege license authorizing clubs and associations of national scope to sell alcoholic beverages at retail on premises specified to the members and guests, and who also sponsor twelve (12) or more events per year which are open to the general public. Annual license fees shall be eighty-five dollars ($85.00), due and payable on May first of each year.

(9)  *Class I* licenses which shall be issued to hospitals or similar facilities only, which shall authorize the retail sale of alcoholic liquor for consumption on the premises by patients, their immediate family members and other hospital guests. Bona fide hospital employees under the age of twenty-one (21) may serve wine in the ordinary course of their duties. The annual fee for such license shall be one hundred dollars ($100.00), due and payable on May first of each year.

(10)  *Class J* licenses which shall authorize the sale at retail and serving of alcoholic liquor at a banquet hall or similar facility (where the predominate purpose of the premises is the holding of private or limited parties or events) only for consumption on the premises of the sale, provided such sale and serving is accessory to the main purpose of operating a banquet hall, or similar facility engaged in the serving of meals on the premises. In addition, the holder of a Class J license may offer up to six (6) eventsper month that are open to the public and may include entertainment (i.e. musical entertainment or poetry reading), excluding adult entertainment as defined in the village's zoning ordinance. The annual fee for such license shall be one thousand two hundred dollars ($1,200.00), due and payable one-half ( 1/2) on May 1 and one-half ( 1/2) on November 1 of each year.

(11)  *Class K* licenses which shall authorize the retail sale of beer and wine only for consumption not on the premises where sold, commonly referred to as a "beer and wine" package license. The annual fee for such license shall be eight hundred fifty dollars ($850.00) due and payable one-half ( 1/2) on May 1st and one-half ( 1/2) on November 1st of each year.



# LICENSE

No. _49_

$ ___$850.00___

### TO SELL ALCOHOLIC LIQUOR AT RETAIL

*By Authority of the* Village of Hazel Crest

License is hereby granted to __Hazel Crest Food & Liquor__

### TO SELL ALCOHOLIC LIQUOR AT RETAIL

Class _E_ - Retail sale of alcoholic liquor but not for consumption on the premises
(KIND AND CLASSIFICATION OF LICENSE)

at No. __2014 W. 170th Street__ in said Village until the __30th__ day

of __April__ A. D. 20 _08_, subject to the provisions of all Ordinances now in force

and may hereafter be passed by said Village

HOURS OF OPERATION

Mon - Fri    8 AM - 9 PM

Sat - Sun    8 AM - 10 PM

WITNESS the hand of the President of the Board of Trustees, and

the Corporate Seal thereof, this __24th__ day of ___April___ A. D. 20 _07_

Attest: _Elaine Andrews_
VILLAGE CLERK

_[signature]_ PRESIDENT OF BOARD OF TRUSTEES

**EXHIBIT**

**D**

**Sec. 4-35. Term; prorating fees, etc.**

Every license required by this article with the exception of Class F licenses, shall terminate on the thirtieth day of April next following issuance, unless sooner revoked or suspended. The fee for a new license shall be the annual fee reduced in proportion to the number of full months that have expired since the last prior May first. The fee for renewal shall be the full annual fee, payable semiannually. There shall be no rebate for the unexpired term for a license. An application for renewal shall not be considered as such unless made prior to April thirtieth and unless submitted with the appropriate fee. No license shall be valid unless the proper fee has been paid.



EXHIBIT

E

### Sec. 4-34. Number of licenses permitted.

(a)  The number of Class A licenses issued under this article shall not exceed one (1).

(b)  The number of Class B licenses issued under this article shall not exceed zero (0).

(c)  The number of Class C licenses issued under this article shall not exceed one (1).

(d)  The number of Class D licenses issued under this article shall not exceed one (1).

(e)  The number of Class E licenses issued under this article shall not exceed three (3).

(f)  The number of Class F licenses issued under this article shall not exceed zero (0).

(g)  The number of Class G licenses issued under this article shall not exceed zero (0).

(h)  The number of Class H licenses issued under this article shall not exceed one (1).

(i)  The number of Class I licenses issued under this article shall not exceed one (1).

(j)  The number of Class J licenses issued under this article shall not exceed one (1).

(k)  The number of Class K licenses issued under this article shall not exceed one (1).

Upon the expiration of any such license, its termination, revocation or the voluntary giving up of said license by the licensee, said license shall no longer be available and the number of licenses for such class authorized hereinabove shall be automatically reduced to reflect the nonavailability of such license.

EXHIBIT

F

babbler



# VILLAGE OF HAZEL CREST

## DEPARTMENT OF FIRE, RESCUE & INSPECTIONAL SERVICES

### BUSINESS OPERATION PERMIT

Hazel Crest Food and Liquor
2014 W. 170th Street

IS HEREBY GRANTED A PERMIT TO OPERATE A BUSINESS WITHIN THE VILLAGE OF HAZEL CREST FOR PERIOD COMMENCING ON May 1, 2007 AND ENDING ON **APRIL 30, 2008**. THE BUSINESS HAS BEEN FOUND TO BE COMPLIANT WITH ALL VILLAGE CODES, SAFETY AND HEALTH REGULATIONS, AT THE TIME OF ISSUE

Mayor

Village Clerk

Signed this 1st day of
May, 2007

**EXHIBIT**

**G**

**Sec. 4-41. Suspension, revocation procedures.**

(a)  The local liquor control commissioner may revoke or suspend any license issued by the village under this article if he determines that the licensee has violated any provision of this chapter or of the Illinois Liquor Control Act; however, there shall be no refund of the license fee.

(b)  No such license shall be revoked or suspended except after a public hearing by the local liquor control commissioner with a three (3) days' written notice to the licensee affording him an opportunity to appear and defend himself.

(c)  If the local liquor control commissioner has reason to believe that any continued operation of a particular licensed premises will immediately threaten the welfare of the community, upon the issuance of a written order stating the reason for such conclusion and without notice or hearing, he may order the licensed premises closed for not more than seven (7) days, giving the licensee an opportunity to be heard during that period; provided, if such licensee is also engaged in the conduct of another business of businesses on the licensed premises, such order shall not be applicable to such other business or businesses.

(d)  Within five (5) days after such hearing, if the local liquor control commissioner determines after such hearing that the license should be revoked or suspended, he shall state the reason or reasons for such determination in a written order of revocation or suspension and shall serve a copy of such order within such five (5) days upon the licensee.



EXHIBIT

H

## VILLAGE OF HAZEL CREST
## COOK COUNTY, ILLINOIS

### ORDINANCE NO.

**AN ORDINANCE PROHIBITING THE ISSUANCE OF ANY CLASS E LIQUOR LICENSES IN THE HAZEL CREST PROPER TAX INCREMENT FINANCING DISTRICT**

**PASSED AND APPROVED BY THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF HAZEL CREST, COOK COUNTY, ILLINOIS, this _____ day of _____, 2007.**

**Published in pamphlet form by authority of the President and Board of Trustees of the Village of Hazel Crest, Cook County, Illinois, this day of _____, 2007.**



EXHIBIT

## VILLAGE OF HAZEL CREST

### ORDINANCE NO.

### AN ORDINANCE PROHIBITING THE ISSUANCE OF ANY CLASS E LIQUOR LICENSES IN THE HAZEL CREST PROPER TAX INCREMENT FINANCING DISTRICT

**WHEREAS,** pursuant to Ordinances No. \_\_\_, \_\_\_ and \_\_\_\_, the Mayor and Board of Trustees of the Village of Hazel Crest established the Hazel Crest Proper Tax Increment Financing District; and

**WHEREAS,** one of the primary goals of the establishment of the Hazel Crest Proper Tax Increment Financing District was to provide for the economic redevelopment and revitalization of this area of the Village; and

**WHEREAS,** the Mayor and Board of Trustees find that the sale of what is commonly referred to as "package liquor"; that is, alcoholic beverages sold at retail in their original package or container not for consumption on the premises, can result in adverse secondary affects which are contrary to the purpose of the Hazel Crest Proper Tax Increment Financing District; and

**WHEREAS,** the Mayor and Board of Trustees have the authority to create and eliminate various categories of liquor licenses; and

**WHEREAS,** the Village has previously established a Class E liquor license which authorizes the holder of said license to sell alcoholic beverages in the original package or container not for consumption on the premises; and

**WHEREAS,** the Mayor and Board of Trustees have determined that the goals of economic development and neighborhood stability within the Hazel Crest Proper Tax Increment Financing

-2-

District will be served by prohibiting the issuance of any Class E liquor licenses within the Hazel Crest Proper TIF District; and

**WHEREAS,** the Mayor and Board of Trustees further find that it is reasonable to provide a period of amortization for any such liquor licensees in the Hazel Crest Proper TIF District currently holding a Class E liquor license; and

**WHEREAS,** the Village of Hazel Crest is a home rule unit of government pursuant to the provisions of Article VII, Section 6 of the Illinois Constitution of 1970; and

**WHEREAS,** as a home rule unit of local government, the Village may exercise any power and perform any function pertaining to its government except as limited by Article VII, Section 6; and

**NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF HAZEL CREST, COOK COUNTY, ILLINOIS, IN THE EXERCISE OF ITS HOME RULE POWERS,** as follows:

**Section 1:** **Incorporation of Recitals.** The recitals set forth hereinabove are incorporated herein.

**Section 2:** **Amendment to Section __ of the Village Code.** Section 4.34 of the Hazel Crest Village Code is hereby amended by adding the following subsection (j):

No property within the area referred to as the Hazel Crest Proper TIF District pursuant to Ordinance No. _____ shall be eligible for a Class E liquor license.

**Section 3:** **Amortization.** Entity currently doing business within the Hazel Crest Tax Increment Financing District and holding a Class E liquor license shall be required to surrender

-3-

said license 90 days after the effective date of this Ordinance. Any entity so surrendering its license shall be entitled to a pro rata refund of that entity's current year liquor license.

**Section 4:** **Effective Date.** This Ordinance shall be in full force and effect from an after its passage and approval, and shall subsequently be published in pamphlet form as provided by law.

**Section 5:** **Home Rule Authority.** This ordinance and each of its terms shall be the effective legislative act of a home rule municipality without regard to whether such ordinance should (a) contain terms contrary to the provisions of current or subsequent non-preemptive state law, or (b) legislate in a manner or regarding a matter not delegated to municipalities by state law. It is the intent of the corporate authorities of the Village of Hazel Crest that to the extent that the terms of this ordinance should be inconsistent with any non-preemptive state law, that this ordinance shall supersede state law in that regard within its jurisdiction.

PASSED BY THE FOLLOWING ROLL CALL VOTE this _____ day of _____, 2007.

AYES: _____

NAYS: _____

ABSENT: _____

APPROVED this _____ day of _____, 2007.


ATTEST:

_____
ROBERT B. DONALDSON, MAYOR


_____
FLORINE ROBINSON, VILLAGE CLERK

G:\rmej\hc\ordres\Prohibit Liquor Licenes in TIF.doc

-4-

# Public hearing on liquor license attracts opposing views

Nearly 80 Hazel Crest residents attended a public hearing on May 26 to comment on a proposed ordinance that would ban package liquor licenses within Hazel Crest Proper's tax increment finance district.

The TIF district runs along 170th Street between Dixie Highway and Park Avenue.

The ordinance would affect Hazel Crest Food and Liquor, a combination convenience and liquor store located in Hazel Crest Proper at 2014 W. 170th Street. If the ordinance is approved, the store would have 90 days to stop selling liquor, but it can continue to sell groceries.

The overwhelming majority in attendance came in support of the store's manager, Ed Tadros, who has operated the store since 1995. Residents said Tadros was a kind and helpful businessman and that his store was needed within the neighborhood, especially for seniors who do not drive and moms needing a loaf of bread, milk or eggs.

However, a few others, like Dorothy Von Lewis, said that the majority of residents who are opposed to the store's liquor sales—many of them seniors—could not make it to the public hearing. Lewis said the store has caused seniors to feel like prisoners in their own homes and it attracts "unsavory individuals to the neighborhood and brings down property values."

Judy Vincent believes just the opposite. She said the store is good for the community.

"I send my 13-year-old there for a roll of tissue. Why should I have to send my daughter to cross a big intersection at 167th Street where kids get killed every day. Why take something out of the neighborhood that is good for the community?" Vincent asked.

Wiletha Davis said that when she is short on money to buy a loaf of bread or milk, "Eddie will give it to me."

Marie Mendez described the store is "well run"

"Please don't take this community store away from us."

Larry Panaga said it is not the store's fault that people stand outside of the establishment drinking liquor or hanging out.

"Eddie can't control people standing around. We have to start calling police when we see them hanging around," he said.

Thomas Griffith, who lives directly across the street from the store, strongly disagreed.

"I do not support a liquor license," he said. "I have seen what it does to the community. I'm tired of picking up liquor bottles. My concern is for my family and my community. I have no problem with the man—Mr. Tedros—but I do have a problem with the product. Getting rid of alcohol will help the neighborhood."

Dorothy Von Lewis said she lived across from the store for many years, left town for five years and recently returned.

"When I came back, my once beautiful neighborhood looked like Beirut," she said. "Things changed. The store sells more liquor than food now. People who are intoxicated throw things in our yards. Intoxicated people hang out in front of the liquor store. All the seniors are afraid to come out of their houses. The store is fine, I just think it should not sell liquor. It's enabling the neighborhood.

"I don't want my kid to go to a store that sells liquor because she will encounter people who are intoxicated. I'm against any kind of liquor being sold in Hazel Crest," Lewis said.

James Evans said alcohol is sold everywhere and that Hazel Crest Food and Liquor should not be singled out.

"Older people who don't have cars go to the store," Evans said.

Dennis Both, the attorney for Hazel Crest Food and Liquor, said he believes "only one business is targeted by the ordinance." He presented a petition to the board signed by 300 residents in support of the establishment.

"Mr. Tadros closes at 9 p.m., he pays his liquor, sales and property taxes. There have been no



citations, which shows he has operated within the law. This board is jumping from no violations to what amounts to a death penalty for the owner."

Trustee Roderick Bashir, who conducted the meeting in the absence of Mayor Robert Donaldson, promised residents that their opinions will be considered when board members deliberate on the proposed ordinance.

"We are doing everything in our power to make sure every voice is heard," he said. "We will take your opinions into consideration."

Trustee Elizabeth Wakefield-Waldren also promised that the board would "take into consideration every comment made tonight when making a decision. Thank you for coming out and sharing your stories and facts with us."

Trustee Vernard Alsberry Jr. said the public hearing gave the board an opportunity "to hear what the public has to say."

Trustee Jane Brown said: "From what you have told us tonight, this is a wonderful store that relates to the community. But this is not about one man and one store. We do appreciate the comments and they will be taken into consideration."
END



**Mayor**
Dr. Robert B. Donaldson

**Clerk**
Dr. Florine Robinson

**Village Manager**
Robert L. Palmer

**Village of Hazel Crest**

**Trustees**
Vernard L. Alsberry, Jr.
Roderick S. Bashir
Dr. Jane P. Brown
Lee Fantroy
Debra J. McGhee
Elizabeth A. Wakefield-Waldren

July 17, 2007

Mr. Dennis E. Both
Brown, Udell & Pomerantz, Ltd.
1332 N. Halsted St, Suite 100
Chicago, IL 60622

RE:    FREEDOM OF INFORMATION REQUESTS

Dear Mr. Both:

The Village of Hazel Crest is preparing the information to address your three freedom of information requests.

Responses to your June 12, 2007, request:
Preparing for July 20, 2007 – 1, 3, 4, 5, 8 and 10
None – 2, 6, 7, 9

Responses to your June 13, 2007, request:
Preparing for July 20, 2007 – 1, 7, 9, 17, 18 and 21
None – 3, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 16, 19, 20, 22 and 23

Any and all maps of the Village of Hazel Crest Proper Tax Increment Financing District:
Attached

Response to your June 26, 2007, request:
1.   Local Records Act
2.   Functional Subdivisions of the Village:
a.   Departments
- Police
- Fire
- Public Works
- Administration
- General
- Civil Defense
- Risk Management



EXHIBIT
K

3000 West 170th Place      Hazel Crest, Illinois 60429      www.villageofhazelcrest.com      (708) 335-9600      FAX (708) 335-9622

Brown, Udell & Pomerantz, Ltd
July 17, 2007
Page Two

      b.  Operating Budget - $10,531,628
      c.  Number and location of separate offices
           Number – three
           Locations:
              Village Hall
              3000 W. 170th Place
              Fire Station II
              2903 W. 175th Street
              Public Works Compound
              17055 California
      d.  Full-time employees – 83
           Part-time employees – 33
      e.  Roster of Board and Commission Members
           Attached
      f.  Fee structure ordinance for liquor licenses
           Preparing for July 20, 2007

3.  No

The Village will contact you when these items are ready for access.

Sincerely,

Robert L. Palmer
Village Manager

RLP:sa

Cc:    John Murphey, Village Attorney

# BROWN, UDELL & POMERANTZ, LTD.

ATTORNEYS AND COUNSELLORS AT LAW

1332 NORTH HALSTED STREET
SUITE 100
CHICAGO, ILLINOIS 60622

TELEPHONE 312-475-9900
FACSIMILE 312-475-1188
WWW.BUPLAW.COM

MICHAEL I. BROWN
GLENN L. UDELL
MICHAEL S. POMERANTZ
JAMES R. DONOVAL
PATRICK J. MACKEY
MICHAEL J. DELRAHIM
WILLIAM M. UJZAK
TONY P. VALEVICIUS
CAMBI I. CANN
DAVID A. DAUERNFEIND
KAREN E. KASPAR
KEITH LEVY

OF COUNSEL
ROBERT J. PETERS
LARA M. KIRTS
GRETCHEN R. VAUGHN

REAL ESTATE ADMINISTRATOR
KATHLEEN A. UURMEISTER

June 13, 2007

**_Sent Via Facsimile (708) 335-9622_**
Dr. Florine Robinson
Clerk of the Village of Hazel Crest
3000 West 170th Place
Hazel Crest, IL 60429

     **Re:** **Freedom of Information Request**

Dear Dr. Robinson,

     Pursuant to the Illinois Freedom of Information Act, I request that the following documents be made available for my review:

1. Any and all documents touching upon the appointment of Haldia Richardson to any position with the Village.
2. Any and all maps of the Village of Hazel Crest Proper Tax Increment Financing District.
3. Any and all redevelopment agreements approved by the Village of Hazel Crest during the period of January 1, 2005 to present.
4. Any and all ordinances or resolutions adopting or approving economic incentives to any business in the Hazel Crest Proper Tax Increment Financing District during the period of January 1, 2005 to present.
5. Any and all ordinances or resolutions approving sales tax incentives or copy tax rebates during the period of January 1, 2005 to present.
6. Any and all employment contracts for Haldia Richardson during the period of January 1, 2005 to present.
7. Any and all municipal budgets for the fiscal years of 2005, 2006 and 2007.
8. Any and all ordinances granting the Mayor power to limit the number of speakers during public participation at the meetings of the Board of Trustees.

# BROWN, UDELL & POMERANTZ, LTD.

ATTORNEYS AND COUNSELLORS AT LAW

9.      Minutes for the meeting of the Board of Trustees for the administrative session and for the regular meeting of the Board of Trustees both held June 12, 2007.

10.     Any and all documents which identify adverse secondary effects associated with the sales of packaged liquor in Hazel Crest Proper Tax Increment Financing District.

11.     Any and all documents that the Mayor and Board of Trustees relied upon in finding that package liquors can result in adverse secondary effects which are contrary to the purpose of the Hazel Crest Proper Tax Increment Financing District.

12.     Any and all document that the Mayor and Board of Trustees relied upon in determining that the goals of economic development and neighborhood stability within the Hazel Crest Proper Tax Increment Financing District will be served by prohibiting the issuance of Class E liquor licenses within the Hazel Crest Proper Tax Increment Financing District.

13.     Any and all documents relied upon by the Mayor and Trustees in determining that ninety (90) days was reasonable for amortizing an existing Class E liquor license.

14.     Any and all documents which disclose or identify real property owned by any elected official of the Village of Hazel Crest and located in the Hazel Crest Proper Tax Increment Financing District.

15.     Any and all documents which identify the names of the Trustees sitting on the subcommittee which directly advises the Board on economic development issues during the period of January 1, 2005 to present.

16.     Any and all documents which explain why the agenda for the meeting of the Board of Trustees held June 12, 2007 at 8:00 p.m. was different from the agenda actually distributed at the meeting of the Board of Trustees.

17.     Any and all minutes of meetings the Board of Trustees held January 1, 2006 and May 1, 2007 wherein the topic of Class E liquor licenses was an agenda item.

18.     Any and all documents identifying the appointment of an ethics officer during the period of January 1, 2005 to present.

19.     Any and all disclosures filed with the Village Clerk by any elected official or his/her spouse disclosing any ownership interest of greater than five percent (5%) in any business, firm or corporation.

20.     Any statements filed with the Village Clerk indicating all current employment and employment for the previous calendar year of all elected officials and their spouses, filed during the period of January 1, 2005 to present.

21.     Any and all documents which identify the number of each class of liquor license available and the number of each class of liquor license in use.

22.     Any and all documents which identify or touch upon adverse secondary effects of the sale of packaged liquor on premises holding a Class B license.

23.     Any and documents which distinguish the adverse secondary effects created by the sale of alcohol for consumption on the premises versus the sale of alcohol for consumption off the premises.

# BROWN, UDELL & POMERANTZ, LTD.

ATTORNEYS AND COUNSELLORS AT LAW

Please advise me as to when these records will be available within the statutory period for compliance.

Very Truly Yours,

Dennis E. Both

**HP Officejet 7410**
Personal Printer/Fax/Copier/Scanner

Log for
Legal Secretary Desk 1st
312-529-5024
Jun 13 2007 3:09PM

#### Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jun 13 3:08PM | Fax Sent | 17083359622 | 0:48 | 3 | OK |