UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ED TADROS and HAZEL CREST | ) |
| FOOD & LIQUORS, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 07 C 4132 |
| v. | ) |
| | ) Judge John W. Darrah |
| VILLAGE OF HAZEL CREST, | ) |
| ROBERT DONALDSON, | ) |
| RODERICK S. BASHIR, | ) |
| JANE BROWN, LEE FANTROY and | ) |
| DEBORAH MCGHEE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Ed Tadros and Hazel Crest Food & Liquors, Inc. ("Hazel Crest Food"), an Illinois corporation, brought suit against Defendants, the Village of Hazel Crest ("the Village"), the President of the Village and several Village Trustees. The suit stems from the loss of Hazel Crest Food's liquor license due to a recently enacted Village ordinance. Currently before the Court is Defendants' motion to dismiss all claims against the individual Defendants, to dismiss Tadros as a Plaintiff, and to dismiss seven of the nine counts of the Complaint.

### BACKGROUND

Plaintiff Hazel Crest Food operates a neighborhood convenience store, which sells food and alcoholic beverages. Plaintiff Tadros has owned and operated Hazel Crest Food since April of 1995. Every year since 1995, Hazel Crest Food has applied for and received an annual Class E Liquor License. The Class E License authorizes the retail sale of alcohol not for

consumption on the premises. Defendant Robert Donaldson is the President of the Village. As President, Donaldson is also the Liquor Control Commissioner for the Village. Defendants Roderick Bashir, Jane Brown, Lee Fantroy and Deborah McGhee are Trustees of the Village ("the Trustee Defendants").

On June 12, 2007, Donaldson introduced, and the Trustee Defendants passed, an ordinance that prohibits the issuance of Class E Liquor Licenses within the Hazel Crest Proper Tax Increment Financing ("TIF") District. The Hazel Crest Proper TIF District, one of five TIF Districts in the Village, contains the store operated by Hazel Crest Food. As originally enacted, the ordinance would have effectively revoked Hazel Crest Food's Class E License after 90 days. However, after Plaintiffs filed this suit, Defendants amended the ordinance so that the license remained valid until April 30, 2008, the date it was originally set to expire.

Plaintiffs allege that the ordinance was passed as retaliation for Tadros's failure to make a donation to a political ally of Donaldson in 2006 and for Tadros's support of Donaldson's opponent in the Village elections in 2007. Donaldson expressed interest in revoking Hazel Crest Food's license as early as November 2006. Although there are other Class E Liquor License holders in the other four TIFs in the Village, Hazel Crest Food is the only Class E License holder in the Hazel Crest Proper TIF. Thus, Hazel Crest Food is the only license holder in the Village affected by the ordinance.

On May 31, 2007, at the behest of Donaldson, the Village held a hearing to consider the adoption of the ordinance. Defendants did not provide notice of the hearing to Tadros, who found out about it only when contacted by a local newspaper for comment. Defendant Bashir, who conducted the hearing, together with the other Trustees in attendance, refused to answer

questions from the audience and failed to provide to the public copies of the proposed ordinance. Public comment at the hearing was overwhelmingly opposed to the ordinance. Furthermore, Tadros provided Bashir with a petition opposing the ordinance, which contained over three hundred signatures. Tadros's request for a meeting with the Village to discuss whatever problems the Village had with Hazel Crest Food or Tadros was refused by Defendants.

On June 12, the Board of Trustees of Hazel Crest convened a meeting, at which the ordinance was placed on the agenda. Defendants gave no notice to Tadros that the ordinance would be discussed at the meeting. Tadros renewed his objection to the ordinance and renewed their request for a meeting with Hazel Crest officials. Defendants ignored Tadros's request and passed the ordinance.

Plaintiffs filed this suit on July 23, 2007. Plaintiffs' Amended Complaint, filed on October 18, 2007, seeks injunctive relief (Count I), declaratory relief (Count II) and alleges violation of Due Process (Count III), violation of Equal Protection (Count IV), deprivation of property in violation of the Fifth and Fourteenth Amendments (Count V), violation of Plaintiffs' First Amendment rights (Count VI), legislative punishment in violation of Article I, Section 10 of the Constitution (Count VII) and violation of the Constitution of the State of Illinois (Count IX). Plaintiffs also seek indemnity under 735 ILCS 10/9-102 (Count VIII).

Defendants have moved to dismiss all claims against the individual Defendants, to dismiss Tadros as a Plaintiff and to dismiss Counts I, II, III, V, VII, VIII, and IX of Plaintiffs' Amended Complaint.

## LEGAL STANDARD

In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, __, 127 S. Ct. 1955, 1964 (2007). Second, the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. at 1965, 1973 n. 14).

## ANALYSIS

### *Legislative Immunity*

Defendants argue that the individual Defendants are absolutely immune from suit for their legislative activities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) (*Bogan*) (local legislators immune from suit under § 1983 for legislative activities); *Ira Iglesia de la Biblia Abieta v. Banks*, 129 F.3d 899, 906 (7th Cir. 1997) (*Iglesia*) (local legislators immune from suit under both United States Constitution and the Constitution of the State of Illinois). Plaintiffs now concede that the Trustee Defendants are immune from suit. However, they argue that their suit against Donaldson should be allowed to proceed because, in his roles as President of the

Village and Local Liquor Commissioner, Donaldson acted in an executive and administrative capacity. Plaintiffs further argue that Donaldson can be held liable for his lobbying efforts toward passing the ordinance.

Plaintiffs cite a wide range of authority in an attempt to show that Donaldson is a member of the executive rather than legislative branch. Plaintiffs note that the Municipal Code of the Village describes Donaldson's duties as executive and authorizes him to perform the duties and exercise the powers conferred upon a mayor of a city. These include the power to release prisoners, the power to sell and convey parcels of land owned by the Village and to execute all instruments necessary for the prosecution or defense of litigation brought by or against the Village. Furthermore, Plaintiffs note that as Liquor Control Commissioner, Donaldson has various powers with respect to liquor licenses, including the powers to grant and revoke licenses, the power to enter upon premises for determining compliance with liquor codes and the power to receive license fees on behalf of the Village.

This list of Donaldson's executive duties and powers is beside the point, however, because Plaintiffs' suit against Donaldson is based solely on his actions related to the passage of the ordinance. While Donaldson does have executive responsibilities, his official role in passing the ordinance, voting for it and signing it was purely legislative. *See Bogan*, 523 U.S. at 55 (voting for and signing legislation are legislative acts, even when done by executives). Furthermore, to the extent that Plaintiffs seek to base liability on Donaldson "instigating his Co-Defendants to retaliate" by passing the ordinance, Donaldson is similarly immune. Donaldson is a member of the Board of Trustees of the Village; thus, his urging other members to vote for the ordinance is protected by legislative immunity. *See Iglesia*, 129 F.3d at 903 (introducing and

5

debating legislation are core legislative acts). Donaldson's efforts to gather votes for the ordinance are also immune from suit under the *Noerr-Pennington* doctrine. *See Tarpley v. Keistleri*, 188 F.3d 788, 794 (7th Cir. 1999) ("parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others"). Therefore, Donaldson is immune from suit for whatever actions he may have taken in lobbying the Trustees to pass the ordinance.

### Shareholder Standing

Defendants next assert that Tadros lacks standing to bring suit. Defendants argue that the only harm alleged in this suit is the loss of the Class E Liquor License and that this loss was suffered directly only by the Hazel Crest Food – not by Tadros. Tadros argues that he, personally, was the victim of Defendants' retaliation and that, therefore, he should have standing in this suit.

To meet the constitutional-standing requirement, a party must show "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." *See Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756-57 (7th Cir. 2008) (*Rawoof*) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Tadros satisfies these requirements due to the indirect injury he suffered as sole shareholder of Hazel Crest Food as a result of the ordinance. However, Tadros must also meet the prudential-standing requirements. *See Rawoof*, 521 F.3d at 756 (in addition to constitutional-standing requirements, there are prudential limitations on a federal court's power to hear cases). Specifically, the shareholder-standing rule generally prohibits shareholders from bringing suit either to enforce the rights of the corporation or to seek redress for indirect harm

suffered as a result of an injury to the corporation. *See Franchise Tax Bd. of Cal. v. Alcan Alum., Ltd.*, 493 U.S. 331, 336 (1990); *Rawoof*, 521 F.3d at 757. However, a shareholder may "pursue an action originating from an injury to the corporation if he has suffered a direct personal injury independent of the derivative injury common to all shareholders." *Rawoof*, 521 F.3d at 757.

In this case, Tadros's injury is not merely derivative of the injury to Hazel Crest Food. Tadros alleges violation of his rights under the First and Fourteenth Amendments. These alleged violations are direct injuries, specific to Tadros, in addition to the financial harm he has suffered indirectly as sole shareholder of Hazel Crest Food. Thus, Tadros's standing is not defeated by the shareholder-standing rule; and Defendants' motion to dismiss Tadros on that basis is denied.

## Due Process Claims

Defendants next seek to dismiss Plaintiffs' due process claim for damages (Count III). The legislative process of enacting generally applicable laws satisfies procedural due process requirements. *See Bakalich v. Village of Bellwood*, 2006 WL 1444893 (N.D. Ill. 2006) ("Precedent instructs that, for the purposes of a procedural due process claim, legislative process *is* due process.") (citing *Chicago Bd. of Realtors, Inc. v. Chicago*, 819 F.2d 732, 738-739 (7th Cir. 1987); *Pro-Eco, Inc. v. Board of Com'rs of Jay County, Ind.*, 57 F.3d 505, 513 (7th Cir. 1995) (*Pro-Eco*) ("Governing bodies may enact generally applicable laws, that is, they may legislate, without affording affected parties so much as notice and an opportunity to be heard.").

Plaintiffs argue that the ordinance is not a generally applicable law because it affects only one business, Hazel Crest Food. Plaintiffs point out that the ordinance applies to only one type of liquor license, the Class E license, and only to one of five TIFs in the Village. However, it is well established that a law may still be generally applicable, even if it affects only one entity. *See*

*L C & S, Inc. v. Warren County Area Plan Com'n*, 244 F.3d 601, 604-5 (7th Cir. 2001); *Pro-Eco*, 57 F.3d at 513. Here, the ordinance does not single out Plaintiff by name. Rather, it eliminates a certain kind of license in a certain area of the Village. Thus, the ordinance is a generally applicable exercise of legislative power, satisfying the procedural due process requirement.

### *Injunctive and Declaratory Relief*

Defendants seek to dismiss Plaintiffs' claims for injunctive and declaratory relief (Counts I and II), arguing that those counts, like Count III, are based on the alleged due process violation. However, Plaintiffs' claims for injunctive and declaratory relief are also based on the alleged violations of Plaintiffs' rights under the First Amendment (Count VI) and the Equal Protection Clause of the Fourteenth Amendment (Count IV). Defendants have not sought to dismiss Counts IV and VI of the Complaint. Therefore, to the extent that Counts I and II are based on these grounds, and not solely on the alleged due process violation, Defendants' motion to dismiss Counts I and II is denied.

### *Regulatory Taking*

Plaintiffs challenge the ordinance as a deprivation of property without compensation in violation of the Fifth and Fourteenth Amendments (Count V). Defendants argue that no taking has occurred because Plaintiffs have not lost all economically beneficial use of the property; Plaintiffs can still operate a convenience store on the property, albeit one that does not sell alcohol. Plaintiffs counter that the property that has been taken is not the leasehold for the premises on which the store is located but, rather, the right to sell liquor as granted in the Class E Liquor License.

Courts addressing this issue have followed the Defendants' approach of considering the taken property to be the real property rather than the liquor license. *See Ross v. City of Chicago*, 1990 WL 37700 (N.D. Ill. 1990) (*Ross*); *Wilcox v. Miller*, 1990 WL 304269 (N.D. Ill. 1990) (*Wilcox*). In *Ross*, the plaintiff lost his liquor license as a result of a referendum prohibiting liquor sales in a single precinct of Chicago. In holding that the referendum did not constitute a taking, the court wrote "the property right at issue is [plaintiff's] leasehold for the premises where he maintained a liquor store, not the right to maintain a liquor store." *Ross*, 1990 WL 37700 at *2. The *Wilcox* court took a similar approach, evaluating the effect of the denial of a liquor license on the value of the plaintiff's real property. *See Wilcox*, 1990 WL 304269 at *3. Here, the ordinance has not deprived Plaintiffs of all economically beneficial uses of the real property on which the convenience store is located; thus, there has been no taking for purposes of the Fifth Amendment. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1018 (1992).

### *Bill of Attainder*

Defendants next seek to dismiss Plaintiffs' claim that the ordinance is a bill of attainder (Count VII). A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977) (*Nixon*). Defendants argue that the ordinance is not a bill of attainder because it does not "inflict punishment." Whether a law "inflicts punishment," for purposes of determining whether it is a bill of attainder, depends on "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens

imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 852 (1984) (quoting *Nixon*, 433 U.S. at 473, 475-76, 478).

Defendants cite *Club Misty, Inc. v. Laski*, 208 F.3d 615 (7th Cir. 2000) (*Club Misty*), in support of their contention that the loss of a liquor license is not punishment. In *Club Misty*, the court noted that the revocation of a license is not a "characteristically punitive sanction." *Club Misty*, 208 F.3d at 617. However, in that case, the loss of the license resulted from a public vote; whereas, here, the ordinance was passed by the Board of Trustees. Furthermore, the court in *Club Misty* noted in dicta that "either a punitive purpose or a characteristically punitive sanction would suffice to make legislation directed against a particular individual or firm (of which a given street address is a transparent proxy) a bill of attainder." *Club Misty*, 208 F.3d at 617. Thus, even if the loss of a license does not fall neatly into any predetermined category of punitive measures, the ordinance might still qualify as a bill of attainder if Plaintiffs can show a punitive purpose.

The second and third criteria call for the court to determine whether the law furthers nonpunitive legislative purposes and whether the legislative record evinces an intent to punish. Defendants note that the ordinance itself finds that the sale of packaged liquor "can result in adverse secondary effects, which are contrary to the purpose of the Hazel Crest Proper Tax Increment Financing District." However, Plaintiffs plausibly suggest that this stated purpose is merely a pretext. Plaintiffs also allege that Defendants have admitted that they have no documents supporting the findings stated in the ordinance. Furthermore, Plaintiffs allege that, of

the five TIFs in the Village, Defendants restricted the sale of alcohol only in the TIF that contains Plaintiffs' store. Finally, Plaintiffs have alleged that Defendants made several comments indicating a desire to find a way to revoke Hazel Crest Foods' license because Plaintiffs were not political supporters of Defendants. Thus, at this stage in the proceedings, deciding a Rule 12(b)(6) motion, Plaintiffs have sufficiently pled a punitive legislative purpose or an intent to punish. Therefore, Defendants' motion to dismiss Count VII is denied.

*State Constitutional Claims/Indemnification*

In response to Defendants' motion to dismiss Plaintiffs' claim for violation of the Constitution of the State of Illinois (Count IX), Plaintiffs have voluntarily dismissed that claim. Therefore, Count IX is dismissed. Finally, because all claims against the individual Defendants have been dismissed, Plaintiffs' claim for indemnification under 735 ILCS 10/9-102 (Count VIII) must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. All claims against Defendants Donaldson, Bashir, Brown, Fantroy and McGhee are dismissed. Counts III, V, VIII and IX of Plaintiffs' Amended Complaint are dismissed. Defendants' Motion to Dismiss Counts I, II and VII against Defendant Village of Hazel Crest is denied.

Dated: June 26, 2008

JOHN W. DARRAH
United States District Court Judge